# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| GREGORY LYNN BAILEY | CIVIL ACTION NO. 06-0882 |
| VS. | SECTION P |
| RICHARD STALDER, ET AL. | JUDGE JAMES |
| | MAGISTRATE JUDGE HAYES |

## RULING ON MOTIONS AND
## REPORT AND RECOMMENDATION ON COMPLAINT

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on May 26, 2006, by *pro se* plaintiff Gregory Lynn Bailey. Plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. He is incarcerated at the East Carroll Detention Center (ECDC), Lake Providence, Louisiana but he complains that he has been denied appropriate medical treatment while incarcerated at ECDC, the Caldwell Correctional Center (CCC), Grayson, Louisiana, and the Riverbend Detention Center (RBDC), Lake Providence, Louisiana. He names LDOC Secretary Richard Stalder, Caldwell Parish Sheriff Steve May, CCC Warden Curtis Powell, East Carroll Parish Sheriff Mark Shumate, RBDC Warden Alvin Jones, RBDC Nurse Pearl Posey and Dr. Don Bailey as his defendants. He prays for an "emergency medical and blood test," an unspecified amount of compensatory damages, and "a full pardon."

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons, it is recommended that the complaint be **DENIED** and **DISMISSED WITH**

1

**PREJUDICE** as frivolous.

In addition, Plaintiff has filed a Motion to Appoint Medical Expert [doc. 8] and a Motion to Appoint Counsel [doc. 9].[1] For reasons stated below, those motions are **DENIED.**

## STATEMENT OF THE CASE

In his original complaint [doc. 1-1], plaintiff alleged that on March 17, 2004, he was an inmate at RBDC. On that date he was examined by RBDC Nurse Pearl Posey. Plaintiff complained of itching, swelling, and burning all over his body. Plaintiff requested "a blood test or AIDS test." Posey refused telling plaintiff that the test was too expensive. Instead, she gave plaintiff some "toinaflate" cream and referred plaintiff to a physician.[2] Within seven days plaintiff was examined by Dr. Don Bailey. Dr. Bailey also refused to give a blood test. He told plaintiff that the LDOC will not authorize the test because it is too expensive. Dr. Bailey prescribed benadryl[3] to alleviate the itching.

---

[1] As these are not among the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, the rulings thereon are issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

[2] Plaintiff may be referring to "tolnaftate" a medication which belongs to the group of medicines called anti-fungals. It is used to treat some types of fungus infections. It may also be used together with medicines taken by mouth for fungus infections. See Medline Plus, Medical Encyclopedia, A Service of the United States National Library of Medicine and the National Institutes of Health at http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202572.html

[3] Benadryl is an antihistamine. Antihistamines are used to relieve or prevent the symptoms of hay fever and other types of allergy. They work by preventing the effects of a substance called histamine, which is produced by the body. Histamine can cause itching, sneezing, runny nose, and watery eyes. See Medline Plus, Medical Encyclopedia, A Service of the United States National Library of Medicine and the National Institutes of Health at http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202060.html

Nurse Posey neglected to tell plaintiff that he had to pay for the medication and plaintiff had to go without the medication for several weeks. Plaintiff claims that during this period Posey attempted to give him "maylock in place of zintab."[4] Plaintiff submitted a grievance to RBDC Warden Jones. Jones advised plaintiff that if he was not diagnosed with AIDS the prison would not pay for tests or treatment. Plaintiff complained that Nurse Posey was not adequately credentialed and was incompetent.

On June 25, 2004 plaintiff, was transferred to CCC. Upon his arrival he was examined by a physician at the nearby Health Center. This physician explained to plaintiff that the blood tests he requested were too expensive to provide to everyone. She advised him that she would first give another test. She gave plaintiff some benadryl and some shampoo and advised plaintiff to rub it on his body for ten days. Plaintiff started this regimen on July 25, 2004, and on July 29 it was discontinued on orders of Caldwell Parish Sheriff Steve May.

On July 29, 2004, plaintiff submitted a grievance to CCC Warden Powell which requested a return visit to the Health Center. The Warden did not respond to the grievance.

---

[4] Plaintiff may be referring to "Maalox" which is an antacid. Antacids are taken by mouth to relieve heartburn, sour stomach, or acid indigestion. They work by neutralizing excess stomach acid. Some antacid combinations also contain simethicone, which may relieve the symptoms of excess gas. Antacids alone or in combination with simethicone may also be used to treat the symptoms of stomach or duodenal ulcers. See Medline Plus, Medical Encyclopedia, A Service of the United States National Library of Medicine and the National Institutes of Health at http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202047.html He may also be referring to a specific Histamine H 2-receptor antagonists, also known as H 2-blockers, known as "Zantac." These medications are used to treat duodenal ulcers and prevent their return. They are also used to treat gastric ulcers and for some conditions, such as Zollinger-Ellison disease, in which the stomach produces too much acid. In over-the-counter (OTC) strengths, these medicines are used to relieve and/or prevent heartburn, acid indigestion, and sour stomach. H 2- blockers may also be used for other conditions as determined by your doctor. See Medline Plus, Medical Encyclopedia, A Service of the United States National Library of Medicine and the National Institutes of Health at http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202283.html

According to plaintiff, he was refused medical treatment or "sick-call" or "pill call" for the remainder of the time he was incarcerated at CCC.

On November 4, 2004, plaintiff requested athlete's foot cream from CCC Nurse Donna. Plaintiff advised Nurse Donna of his indigence and she advised him to get the medication from Ms. Kelley at the prison commissary. Ms. Kelley sent plaintiff back to Ms. Donna and the two sent plaintiff back and forth for a period of two weeks.

On February 4, 2005, Warden Jones asked that plaintiff be returned to RBDC. On March 22, 2005 plaintiff requested "sick call." He was then transferred to ECDC.

On October 10, 2005, plaintiff was returned to RBDC where he was placed in lock-down for fighting.

On April 17, 2006, plaintiff requested "sick call." He was given benadryl. During the period from June 4, 2004 – April 17, 2006, plaintiff took benadryl "five times for one day." He was returned to ECDC. When the benedryl "ran out" plaintiff was sent back to Dr. Bailey for examination. He was examined by Dr. Bailey's assistant who refused to give plaintiff a blood test. Instead, he gave plaintiff some medication for itching. Plaintiff claims that this medication is ineffective.

Plaintiff signed his pleading on May 25, 2006.

On June 27, 2006, the undersigned directed plaintiff to amend his complaint to provide additional information. [doc. 6] On August 2, 2006, he filed a thirteen page handwritten amended complaint which reiterated the allegations of the original complaint without addressing any of the concerns raised in the Memorandum Order. [doc. 7] He also filed a *pro se* motion for appointment of counsel and a motion for the appointment of a medical expert. [docs. 8 and 9]

**LAW AND ANALYSIS**

*1. Appointment of Counsel*

Plaintiff requests court-appointed counsel to assist him in this litigation. Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983. "Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985). Pursuant to 28 U.S.C. §1915(e)(1), federal courts are given the power to request that an attorney represent an indigent plaintiff.

In the case of *Mallard v. United States District Court for the Southern District*, 490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United States Supreme Court held that federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1) to make compulsory appointments.

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." See *Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989). No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors: the type and complexity of the case; the plaintiff's ability to adequately present and investigate his case; the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of

5

evidence and cross-examination; and the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; *see also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242. Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf. *See Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is not excused from trying to procure counsel for himself.

In his civil rights complaint, plaintiff alleged that prison officials have been deliberately indifferent to his health. This claim is typical of those often asserted in civil rights litigation and is not complex. As will be demonstrated, he has adequately presented the contours of his complaint and the appointment of counsel would benefit neither plaintiff nor the court. Finally, plaintiff has failed to demonstrate that he has attempted to procure counsel on his behalf.

Accordingly, plaintiff's request for appointment of counsel [doc. 9] is hereby **DENIED** because the allegations contained in the complaint and plaintiff's motion do not demonstrate "exceptional circumstances" which would warrant the appointment of counsel. Moreover, plaintiff's request is DENIED because plaintiff has failed to demonstrate any effort to secure counsel on his own behalf.

## 2. *Appointment of an Expert Witness*

Plaintiff also requests the appointment of a medical expert pursuant to Rule 706 of the Federal Rules of Evidence [doc. 8]. As is shown hereinafter, for the purposes of this report, it is assumed that all of the facts alleged by the plaintiff in his original complaint and his amended complaint are true. Nevertheless, plaintiff has failed to state a claim for which relief may be

6

granted. Therefore, plaintiff has not shown how the appointment of a medical expert would assist the court in the resolution of this matter. His motion is therefore **DENIED**.

*3. Frivolity Review*

When a prisoner is allowed to litigate a civil rights complaint *in forma pauperis,* the district court is obligated to dismiss the case at any time if it determines that the complaint is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C.A. § 1915(e)(2)(B). See 28 U.S.C.A. § 1915A (stating that when a prisoner seeks redress from a governmental entity or one of its employees, the court shall review the complaint as soon as practicable and dismiss it if the court finds the complaint frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief); 42 U.S.C.A. § 1997e(c) (providing that a district court shall on its own motion or the motion of any party dismiss a complaint by a prisoner regarding prison conditions if the court is satisfied the complaint is frivolous, malicious, falls to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant).

A claim is frivolous if it has no arguable basis in law or fact. *Nietzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir.1998) (quotation omitted). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir.1998).

While district courts are required to construe *in forma pauperis* complaints liberally, particularly in the context of dismissals under § 1915(e)(2)(B), they are, nonetheless, given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994). A complaint may not be dismissed under § 1915(d)(2)(B) "simply because the court finds the plaintiff's allegations unlikely." *Jolly v. Klein*, 923 F.Supp. 931, 942-43 (S.D.Tex.1996). A civil rights plaintiff must support his claim(s) with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). See *Wesson v. Ogleby*, 910 F.2d 278, 281 (5th Cir.1990) ("An *IFP* complaint that recites bare legal conclusions, with no suggestion of supporting facts, or that postulates facts of an entirely fanciful nature, is a prime candidate for dismissal under [§ 1915(d)(2)(B) ]."). A district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97. Plaintiff has been afforded the opportunity to amend his original complaint to state a claim. As is shown hereinafter, his claims are clearly frivolous and dismissal on that basis is therefore recommended.

### *4. Deliberate Indifference*

Plaintiff claims that he has been denied adequate medical care. Medical care claims asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the refusal or delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285,

50 L.Ed.2d 251 (1976).

Deliberate indifference in the context of the failure to provide reasonable medical care to a convicted prisoner means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). The fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

Plaintiff has not alleged facts sufficient to establish deliberate indifference in this context. The information submitted by the plaintiff does not reveal that he was ever subject to a "substantial risk of serious harm."

More importantly, plaintiff has not shown that the defendants were aware of facts from which an inference of substantial risk of serious harm could be drawn. Further, even if he had made such a showing, he has failed to show that the defendants actually drew such an inference and that their response to his complaints indicated that they subjectively intended that harm occur

9

to him. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-459 (5th Cir.2001).

In addition, whether or not the defendants "should have perceived" a risk of harm to plaintiff, but did not, is of no moment since "...the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

Plaintiff's allegations of fact have been accepted as true for the purposes of this Report. The complaint reveals that on each occasion that plaintiff complained about a medical condition to the defendants, he was afforded some medical treatment.[5] Plaintiff, of course, disagrees with the diagnoses made by the defendants and the efficacy of the treatment provided; however, his disagreement with diagnosis and treatment is insufficient to state a claim for deliberate indifference. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

In short, the facts alleged herein, taken as true for the purposes of this Report, do not establish that the defendants were deliberately indifferent to a serious medical need. Plaintiff's claim is therefore frivolous and dismissal on that basis is recommended.

*5. Conclusion*

Therefore,

---

[5] Plaintiff's complaint reveals that he was examined by RBDC Nurse Posey on March 17, 2004 and by Dr. Bailey some seven days later. Both Posey and Bailey provided some treatment and each gave plaintiff medication to relieve his itching. Plaintiff was again examined by a physician on June 25, 2004 following his transfer to CCC. Plaintiff was again provided medication to relieve his itching. Plaintiff was examined by Nurse Donna and Nurse Kelley during a two week period beginning in November 2004. Plaintiff was examined by Dr. Bailey in April 2006.

Plaintiff's Motion to Appoint Medical Expert [doc. 8] and Motion to Appoint Counsel [doc. 9] are **DENIED;** and,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted all in accordance with the provisions of 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) and (2).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 11th day of September, 2006.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE